IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KARI MATRAI and
KENNY MATRAI,

        Plaintiffs,

        v.                                    Case No. 14-2022-SAC

AM ENTERTAINMENT, LLC,
PAUL B. SEATON,
QUEST INTEGRATED SYSTEMS, INC.,
and DIRECTV, LLC,

        Defendants.

MEMORANDUM AND ORDER

This federal question case comes before the court on Defendant DIRECTV's motion for judgment on the pleadings,[1] pursuant to Fed. R. Civ. Pro. 12(c).

The two individual Plaintiffs allege that they worked as satellite installation and repair technicians for the Defendants. They bring the following claims against DIRECTV in their first amended complaint: failure to pay overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219; breach of contract to compensate Plaintiffs; unjust enrichment by failing to compensate Plaintiffs; and interference with business expectancy.

---

[1] The parties note that after Defendant Quest Integrated Systems, Inc. moved for judgment on the pleadings, they reached an agreement to dismiss that defendant from this case. Accordingly, the Court excludes any analysis of Quest in this order, as the parties have done in their post-agreement briefs.

**Background**

Plaintiffs allege the following facts, which the Court construes in the light most favorable to them. DIRECTV markets and installs satellite television systems nationwide. Plaintiffs worked as satellite television installers, installing systems for DIRECTV, from December 1, 2010 to April 13, 2013. Plaintiffs provided their own tools and materials for their work, paid for their own equipment, storage, and insurance, and were liable for payroll taxes as if they were self-employed. The installer agreements between the parties identified Plaintiffs as independent contractors. While working for Defendant, Plaintiffs each worked, on average, approximately 27.6 hours of overtime per week, but received no overtime compensation. Although both plaintiffs worked, Kari Matrai was never paid for any of her work.

After Plaintiffs left Defendant's employment, they sought to carry on a contracting business as satellite television installers, including installing systems for DIRECTV. While responding to an advertisement for certified installers, Plaintiffs spoke on January 25, 2014 with a contractor and arranged to begin contracting work. Based on those discussions and the contractor's initiation of background checks and drug tests on Plaintiffs, Plaintiffs fully expected to begin work soon thereafter. On February 6, 2014, however, the contractor informed Plaintiffs that he could not bring them on. When Plaintiffs asked why, he responded, "David," which Plaintiffs

understood to refer to R. David Miller, DIRECTV's General Manager for the Topeka region. As a result of that event, Plaintiffs lost future income.

**Judgment on the Pleadings Standard**

The court reviews a Rule 12(c) dismissal "under the standard of review applicable to a Rule 12(b)(6) motion to dismiss." *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005) (internal quotation marks omitted). In analyzing the motion, the court accepts as true all well-pleaded factual allegations in the complaint and views them in the light most favorable to the plaintiff. *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Federal Election Comm'n.*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "Such facts must 'raise a right to relief above the speculative level.'" *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 556. Where a complaint

pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*

Where, as here, multiple defendants are sued, notice and plausibililty are best served where the complaint specifically states "who is alleged to have done what to whom." *See Twombly,* 127 S.Ct. at 1970–71 n. 10; *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Unless the complaint alleges which defendant engaged in what acts, it is impossible for the defendants to ascertain what particular illegal acts they are alleged to have committed.

> To carry their burden, plaintiffs under the *Twombly* standard must do more than generally use the collective term "defendants." *Id.* This Court, in *Robbins,* placed great importance on the need for a plaintiff to differentiate between the actions of each individual defendant and the actions of the group as a whole. *Id.* This is because the purposes of plausibility, notice and gatekeeping, are best served by requiring plaintiffs to directly link an actual individual with the alleged improper conduct.

*VanZandt v. Oklahoma Dept. of Human Services*, 276 Fed.Appx. 843, 849, 2008 WL 1945344, 5 (10th Cir. 2008). Although this requirement has been developed and is most frequently applied in the context of § 1983 cases which require proof of individual participation, and usually involve state agencies and individual defendants, *see e.g., Robbins*, 519 F.3d at 1250, its rationale applies in other contexts as well. *See Robbins*, 519 F.3d at 1250, citing *Medina v. Bauer,* 2004 WL 136636, *6 (S.D.N.Y., Jan.27, 2004) (non-

§ 1983 case), and citing *Lane v. Capital Acquisitions and Mgmt. Co.*, 2006 WL 4590705, *5 (S.D.Fla., April 14, 2006) (non-§ 1983 case). This rationale applies here, where the defendants consist of two LLCs, one corporation, and one individual, and the liability is based on individual participation. Accordingly, the allegations in the complaint that Defendants collectively took certain acts or that "all Defendants" engaged in certain acts shall not be considered.

**Request to Amend**

Plaintiffs, in their response to the motion to dismiss, request leave to amend their complaint. Generally, a party must file a motion to amend before the court will grant leave to amend. *See* D. Kan. R. 7.1 (requiring a separate motion and memorandum); *Calderon v. Kan. Dep't of Social & Rehab. Servs.*, 181 F.3d 1180, 1185–87 (10th Cir. 1999) (a response to a motion to dismiss does not constitute a request to amend a complaint); *Robinson v. Farmers Services L.L.C.,* 10–CV–02244–JTM, 2010 WL 4067180, at *5 (D.Kan. Oct. 15, 2010). No motion to amend has been filed.

If a party does not file a formal motion to amend its pleading, the Tenth Circuit provides that a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis for the proposed amendment before the court must recognize that a motion for leave to amend is before it. *Calderon,* 181 F.3d at 1186–87. Here, that requirement has been met, as Plaintiffs have set forth in their brief the

additional acts allegedly taken by DIRECTV which Plaintiffs desire to include in an amended complaint. *See* Dk. 34, p. 3. Defendant acknowledges its notice of these facts by contending in its reply brief that an amendment based on them would be futile. Accordingly, the Court will, in its discretion, treat Plaintiff's request as a motion to amend.

**Motion to Amend Standard**

The relevant rule provides that leave to amend shall be given freely "when justice so requires." Fed.R.Civ.P. 15(a)(2). The decision whether to grant a motion to amend is left to the sound discretion of the district court. *Drake v. City of Fort Collins*, 927 F.2d 1156, 1163 (10th Cir. 1991). Nonetheless, the court may deny leave to amend where amendment would be futile. *Bradley v. Val–Mejias,* 379 F.3d 892, 901 (10th Cir. 2004). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id. See also Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013).

DIRECTV argues futility in contending that the complaint, even if amended to include the additional facts, fails to sufficiently plead the existence of an employment relationship between it and the Plaintiffs. Defendant asserts that Plaintiffs were not employees but independent contractors. Plaintiffs counter that they were employees because DIRECTV controlled their day-to-day activities. Plaintiffs allege in their first amended

complaint the following acts taken by the Topeka region's General Manager and Assistant Manager:

- Assigning jobs to Plaintiffs;

- Requiring Plaintiffs to provide estimated times of completion for specific projects;

- Telling Plaintiffs when they could and could not go home at the end of a work day;

- Requiring Plaintiffs to wear the same wardrobe as regular DIRECTV employees;

- Evaluating and compensating Plaintiffs on the same basis as regular DIRECTV employees; and

- Dictating what types of material, such as pipe fittings, that Plaintiffs were permitted to use;

Dk. 4, p. 5. Plaintiffs additionally allege via their *de facto* motion to amend that Direct TV engaged in the following acts:

- Tested and evaluated Plaintiffs at its facility;

- Held mandatory meetings at its facility;

- Told Plaintiffs it could terminate them or other techs for any reason;

- Played the primary role in terminating Plaintiffs;

- Provided certain equipment for installations;

- Directed routes for Plaintiffs to drive;

- Told plaintiffs the number of jobs they were required to do in a day;

- Gave Plaintiffs a DIRECTV tech number; and

7

- Required Plaintiffs to obtain permission from DIRECTV before rescheduling jobs.

Dk. 34, p. 3.

**FLSA Analysis**

Section 216(b) of the FLSA creates a cause of action against employers who violate the overtime compensation and/or minimum wage requirements mandated in sections 206–207. An "employer" subject to the FLSA is "any person acting directly or indirectly in the interest of an employer in relation to an employee…." 29 U.S.C. § 203(d). The FLSA defines the verb "employ" expansively to mean "suffer or permit to work." 29 U.S.C. § 203(g).

The Supreme Court has instructed courts to construe the terms "employer" and "employee" expansively under the FLSA. *Nationwide Mutual Ins. Co. v. Darden,* 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992); *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) ("[T]here is in the [FLSA] no definition that solves problems as to the limits of the employer-employee relationship under the Act…. The definition of 'employ' is broad."); *Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973).

The Tenth Circuit has noted that determinations about employment relationships under the FLSA are "not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.' " *Baker v. Flint Eng'g & Const. Co.,* 137 F.3d 1436, 1440 (10th

8

Cir. 1998) (quoting *Henderson v. Inter–Chem Coal Co., Inc.*, 41 F.3d 567, 570 (10th Cir. 1994). "Because the definition of 'employee' under the FLSA is broad, but not precise, courts apply the Supreme Court's 'economic reality' test to determine the scope of employee coverage under the FLSA." *Johns v. Stewart,* 57 F.3d 1544, 1557 (10th Cir. 1995), citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28 at 33, 81 S.Ct. 933.

The Tenth Circuit does the same. In determining whether an individual is an employee or an independent contractor for purposes of the FLSA, it uses the "economic realities" test. *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 506 (10th Cir. 2012). That test focuses on whether the employee is economically dependent on the business to which he renders service by examining the following factors: (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business. *Id.* (citation and quotation omitted). "Th[e] [economic-reality] test is based upon the totality of the circumstances, and no one factor in isolation is dispositive." *Henderson,* 41 F.3d at 570 (applying economic-reality test to determine if individual was an employee under the FLSA) (citing *Dole v. Snell,* 875 F.2d 802, 805 (10th Cir. 1989)).

9

Both parties urge the court to rely on FLSA cases involving other cable installers, some of which apply variants of the economic realities test. Some of those cases find installers to be employees, while others find installers to be independent contractors. But because of the fact-specific nature of the inquiry and the different procedural posture of some of those cases (summary judgment), those cases are not instructive.

Given the broad definition of "employer" under the FLSA, the constraints of a Rule 12(c) review, and the specific allegations included in the complaint and in the Plaintiff's response brief, the Court finds that Plaintiffs have set forth sufficient facts to show that their motion to amend is not futile, and sufficient plausibility to withstand the motion to dismiss. Although those facts may ultimately prove insufficient to meet the economic realities test, they are sufficient at the pleading stage. The court notes that in other FLSA cases, DIRECTV has generally been unsuccessful in moving to dismiss on the basis that installers are independent contractors. *See e.g.*, *Renteria-Camacho v. DIRECTV, Inc.*, 2015 WL 1399707 (D.Kan. 2015) (denying motion to dismiss where DIRECTV alleged it was not Plaintiff's employer for purposes of FLSA claim); *Lang, et al. v. DIRECTV, Inc.*, 735 F.Supp.2d 421, 432–434 (E.D.La. 2010) (same); *Arnold v. DIRECTV, Inc.*, 2011 WL 839636 (E.D.Mo. 2011) (same); *Cf*, *Arnold v. DIRECTV, Inc.*, 2013 WL 6159456 (E.D.Mo. 2013) (arbitration case finding facts sufficient for

Plaintiffs to sustain their burden for conditional certification on the joint employer issue).

**Breach of Contract and Unjust Enrichment**

Defendant contends that Plaintiffs' claims for breach of contract and unjust enrichment must fail because Plaintiffs show no contract between them and DIRECTV, and no reasonable expectation of compensation from DIRECTV.

The complaint alleges breach of contract by stating:

> Plaintiffs and Defendants entered into Agreements, within the context of Plaintiff's employment with Defendants, in which Plaintiffs would provide labor, materials, equipment, and supplies to Defendants for purposes of carrying on Defendants' business, and Defendants were to compensate Plaintiffs accordingly. … Defendants accepted the benefit of Plaintiffs' labor, materials, supplies, and equipment but failed to make payment for the labor, materials, supplies, and equipment as required by the Agreements.

Dk. 4, p. 9.

The only agreement referenced in the complaint is the installer agreement, but that agreement expressly identified Plaintiffs as independent contractors and is not alleged to have been breached. Nor does Plaintiffs' response brief identify any express agreement allegedly breached. Instead, the brief appears to assert an implied agreement in contending that "[u]nder Kansas law, an employment relationship creates an implied contract."

Plaintiffs cite *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 213-14 (2000), in support of this assertion. *Id*. But *Wilkinson* merely applied the

11

established rule that the totality of circumstances must be examined to clarify the intention of the parties at the time the relationship began:

> Where it is alleged that an employment contract is one to be based upon the theory of 'implied in fact,' the understanding and intent of the parties is to be ascertained from several factors which include written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced.

*Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 214, 4 P.3d 1149, 1162-1163 (2000), quoting *Morriss v. Coleman Co.*, 241 Kan. 501, Syl. ¶ 1, 738 P.2d 841 (1987).

Plaintiffs are hard pressed to contend that despite a written agreement between the parties which identifies and treats Plaintiffs as independent contractors, they had an implied employment agreement that Defendant somehow breached by treating them as independent contractors. Having reviewed the complaint, the court finds that it fails to plausibly allege that DIRECTV expressly or impliedly contracted with Plaintiffs to be employees of and not independent contractors for DIRECTV, or that DIRECTV would pay them overtime, or that DIRECTV would pay Plaintiffs for their equipment and supplies, or any other breach of contract claim. *See Albright v. City of Leavenworth, Kan.*, 69 F.3d 547 (Table) (10th Cir. 1995) (summary judgment finding no promise, express or implied, that the Plaintiffs would

receive the additional pay they claimed, so finding no contract that DirecTV could have breached by not doing so).

The complaint's allegation of unjust enrichment is similarly conclusory in alleging the following: Defendants requested that Plaintiffs provide labor, materials, supplies, and equipment for work done on various projects; Plaintiffs did so pursuant to Defendants' request; Defendants received the direct benefit of Plaintiffs' labor, materials, supplies, and equipment; and Defendants' retention of the benefits of that labor, materials, supplies, and equipment would be unjust. Dk. 4, p. 10. Plaintiffs seek compensation for the fair and reasonable value of the labor, materials, supplies, and equipment they provided to Defendant, for which they were not compensated. *Id.*

Under Kansas law, "[u]njust enrichment arises when (1) a benefit has been conferred upon the defendant, (2) the defendant retains the benefit, and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Draper,* 288 Kan. 510, Syl. ¶ 6. See also *Haz–Mat Response, Inc. v. Certified Waste Services Ltd.,* 259 Kan. 166, 176, 910 P.2d 839 (1996) ('"The substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to [another].' ") (quoting *Peterson v. Midland Nat'l Bank,* 242 Kan. 266, 275, 747 P.2d 159 [1987]).

Here, as with Plaintiffs' breach of contract claim, the amended complaint fails to contain sufficient factual matter, accepted as true, to state a claim for unjust enrichment that is plausible on its face. The Court cannot reasonably infer that this Defendant legally owed Plaintiffs anything it did not pay, or unjustly retained a benefit it had received from Plaintiffs. The breach of contract and unjust enrichment claims shall therefore be dismissed.

**Interference with Prospective Business Advantage**

Defendant contends that Plaintiffs' claim for interference with prospective business advantage fails to state a claim for relief because it fails to plead the essential element of malice. Plaintiffs counter that their complaint meets this element by alleging that DIRECTV's General Manager for the Topeka region (Miller) acted "intentionally" in speaking to the contracting party, objecting to Plaintiffs' involvement, and dissuading him from contracting with Plaintiffs. Plaintiffs assert that Miller's act itself demonstrates specific intent to injure Plaintiffs, and that malice includes acting "with … specific intent to injure," citing *Brown v. University of Kansas*, 16 F.Supp. 3d 1275, 1291 (D.Kan. 2014).

Under Kansas law, the plaintiff must show that the alleged wrongdoer sought intentionally or maliciously to harm his prospective business advantage. *See Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d 1106, 1115 (1986) (finding no malice where the plaintiff's past employer told his

14

prospective employer that it had terminated the plaintiff for having stolen company property, a true statement). The requirements for this tort are:

> (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.

*Turner,* 240 Kan. at 12. The tort is "predicated on malicious conduct by the defendant." *Id.* Malice is defined as "a state of mind characterized by an intent to do a harmful act without a reasonable justification or excuse." PIK 3d § 103.05, 124.92 cmt; *L & M Enters., Inc. v. BEI Sensors & Sys. Co.,* 231 F.3d 1284, 1288 (10th Cir. 2000); *Turner,* 722 P.2d at 1116–17.

The following factors help determine whether an actor's conduct in intentionally interfering with a prospective contractual relation of another is improper:

> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interests sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f) the proximity or remoteness of the actor's conduct to the interference, and
> (g) the relations between the parties.

*Turner*, 240 Kan. at 14, quoting from The Restatement (Second) of Torts, Section 767. "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged

cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

Here, the complaint's allegation that Miller acted "intentionally" is a conclusion. It neither alleges that Miller acted with specific intent to injure Plaintiffs nor alleges facts otherwise sufficient to show malice. A party whose acts are motivated by his own self-interest does not necessarily act maliciously. *See e.g.*, *M West, Inc. v. Oak Park Mall, LLC.*, 293 P.3d 168, at 10 (Table) (2013); *Moeller v. Kain*, 2008 WL 4416042, 7 (Kan.App. 2008). Therefore, merely alleging that Miller intentionally dissuaded the contracting party from going forward with the Plaintiffs' business relationship is insufficient to allege malice. The complaint leaves open the possibility that Miller acted in his own self-interest without intent to harm, and thus fails to plead sufficient factual content that would allow the court to draw the reasonable inference that the defendant acted with evil intent, *i.e.*, maliciously. This claim shall therefore be dismissed.

IT IS THEREFORE ORDERED that DIRECTV's motion for judgment on the pleadings (Dk. 28) is granted as to the state law claims and is denied as to the FLSA claim.

IT IS FURTHER ORDERED that within fourteen days Plaintiffs shall file an amended complaint to include in their FSLA claim the factual allegations stated in their response brief and discussed in this order.

Dated this 14th day of April, 2015, at Topeka, Kansas.


                                                   s/Sam A. Crow
                                                 Sam A. Crow, U.S. District Senior Judge